[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this complaint to collect a promissory note in the amount of $3,000. The defendant pleads duress.
The plaintiff held a second mortgage on a building that the defendant was purchasing. The plaintiff and defendant agreed on the payment of $5,000. for release of the mortgage. A closing date was set for December 31, 1990. CT Page 5646
In his complaint, the plaintiff alleged that a promissory note in the amount of $3,000.00, allegedly dated October 1990, was signed with a due date on or before January 1, 1992.
Thereafter, the plaintiff by his amended complaint dated March 10, 1993 states that the promissory note is in the amount of $2,500.00 due on or before January 1, 1992.
On the stand, the plaintiff could not explain why he initially advised his attorney that the amount due was $3,000.00, then changed his mind and stated it was $2,500.00, and on the stand insisted that the year 1992 was in error, that it should have been 1991. He kept, in fact, changing his testimony.
The defendant stated that his recollection was that the note was executed ten to fifteen days before the closing, which took place December 31, 1990 that would in effect be approximately a one-year note if the note were to become due in 1991. As to whoever changed the note from 1991 to 1992, that was never The defendant stated that his recollection was that the note was executed ten to fifteen days before the closing, which took place December 31, 1990 that would in effect be approximately a one-year note if the note were to become due in 1991. As to whoever changed the note from 1991 to 1992, that was never explained in the course of the trial. However, the only consistent statement had been by the plaintiff that it had been a one-year note. The plaintiff also had no recollection as to the date of the note, although he allegedly told his attorney when the complaint was drawn that it was October 15. When the plaintiff was asked could it have been in December that the note was executed, he replied that it must have been in December.
In October of 1990, the plaintiff came to the defendant's place of business and agreed to sign a release of the mortgage if he received $5,000.00. The defendant gave him a check for $5000. which the plaintiff cashed November 6, 1990 (Exhibit 2). Plaintiff immediately called the bank, Colony Savings sank, and advised Mr. Hotchkiss, the officer, that he would agree to sign the release of his mortgage.
Based upon that statement (which was heard by the defendant's wife), the defendant proceeded to execute his commitment to the bank, with the commitment fee of $7,200.00, (Exhibit 1). He retained the law firm of Donovan Morello and obligated himself for $3,500.00 counsel fees. The defendant then put a "For Sale" CT Page 5647 sign in his former place of business, started to prepare to move to the new location, and advised his customers that in fact he was moving. The bank, by Mr. Hotchkiss, called the defendant during the month of December and stated that the plaintiff was again refusing to sign the release.
The defendant called the plaintiff and asked why he wouldn't honor the agreement that had been reached between the parties, especially when performance had been made on the part of the defendant by having paid the $5,000.00. The plaintiff stated he wanted an additional $3,000.00.
The defendant had his "back to the wall" since he had already obligated himself to purchase the property, had signed a commitment to the bank, had expended sums of money somewhere in the vicinity of $15,000-$16,000.00 and had advised his customers that he was moving. The defendant told the plaintiff to come to his shop. The plaintiff brought a $3,000.00 note. The defendant signed the note, with the understanding that he felt the plaintiff would never have the nerve to demand payment.
 I.
The original deal — $5,000. for the mortgage release-was a fait accompli. The defendant paid the sum of $5,000. The plaintiff did not sign the release. This fact alone does not vitiate the previous transaction.
The demand for an additional $3,000. does not make it a modification of the first contract. Blakeslee v. WaterCommissioners, 121 Conn. 163, 192. Corbin on Contracts § 171 The new matter arose some 60 days after the first contract was made.
"(1) A promise made in recognition of a benefit previously received by the promisor from the promisee is binding to the extent necessary to prevent injustice.
(2) A promise is not binding under Subsection (1)
(a) if the promisee conferred the benefit as a gift or for other reasons the promisor has not been unjustly enriched; or
(b) to the extent that its value is disproportionate to the benefit." CT Page 5648
Restatement of Contracts 2nd. Vol. 2, § 86; FarnsworthContracts Vol. 1, 2.8.
The new deal — $3,000. note — cannot be supported by the earlier payment of $5,000. There must be some new consideration. There must be a new bargain. The consideration must be bargained for.
"(1) To constitute consideration, a performance or a return promise must be bargained for.
(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."
Restatement of Contracts 2d, Vol. 2, § 71.
There is nothing moving from the plaintiff to the defendant in this second transaction. The plaintiff did get from the defendant a promise to pay more money for the release than $5000. which fee he paid.
"But it is not enough that the promise induces the conduct of the promisee or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain. Moreover, a mere pretense of bargain does not suffice, as where there is a false recital of consideration or where the purported consideration is merely nominal. In such cases there is no consideration and the promise is enforced, is at all, as a promise binding without consideration under [§§ 82-94]."
Comment a to § 71 of the Restatement of Contracts 2d.
"As between the original parties, however, a promissory note is nothing more than a written contract for the payment of money. See comment 3 to § 3-119 of the Uniform Commercial Code. Since the note was a contract, the fundamental rules governing contract law are applicable. 11 Am.Jur.2d, Bills and Notes § 1, p. 29. A promissory note remains a simple contract even though lacking an element essential for negotiability."
Appliances, Inc. v. Yost, 181 Conn. 207, 209, 210.
The court, making an inquiry into of this contract, will have CT Page 5649 no problem in finding that nothing by way of consideration passed from the plaintiff to the defendant.
 II.
Duress must be specifically pleaded; P.B., Section 164.
"What constitutes duress, is a matter of law; whether or not it enters into a particular transaction is a question of fact.Galusha v. Sherman, 105 Wis. 268, 81 N.W. 495." Atwood v. Jarrett,81 Conn. 532, 533.
There must be
(1) a "wrongful" act
(2) which overcomes the will of the person
(3) which has no adequate legal remedy to protect his interests. 79 A.L.R.3d 589, 603.
"Duress means (a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." Restatement of Contracts, Section 492.
"Duress may be exercised by . . .
(e) any other wrongful acts that compel a person to manifest apparent assent to a transaction without his volition. . . ."Restatement of Contracts, Section 493. (See illustration to clause).
"When the duress of a party induces another to enter into a transaction, the nature of which he knows or has reason to know, and which he was under no duty to enter into, the transaction is voidable against the former. . . ." Restatement of Contracts,
Section 495.
Courts have greatly expanded the claims of threats that will be characterized as improper.
"A threat is improper if, . . .
(d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient." Restatement ofCT Page 5650Contracts 2d, Section 176.
"(19) "Good faith" means honesty in fact in the conduct or transaction concerned." Section 42a-1-201-(19), Connecticut General Statutes.
Our Supreme Court has spelled out the rules for duress.
"The test in determining whether there was duress, is not so much the means by which the party was compelled to execute the contract, as it is the state of mind induced by the means employed, the fear which made it impossible for him to exercise his own free will. In Galusha v. Sherman, 105 Wis. 263, 277, 81 N.W. 495,47 L.R.A. 417, there is a full discussion of the subject. It is there said: `The making of a contract requires the free exercise of the will power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party, for the time being, through fear, is bereft of his free will power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. There is no legal standard of resistance which a party so circumstanced must exercise at his peril to protect himself. The question in each case is, Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, or the person or liberty of his wife or child, the advantage thereby cannot be retained.'"McCarthy v. Taniska, 84 Conn. 377, 381
The defendant has established duress by the appropriate rules.
The court finds that the promissory note is void for lack of consideration. Further, any liability under the note has been avoided by duress, which was properly pled and proven by the defendant.
Judgment may enter for the defendant.
Robert P. Burns, Judge CT Page 5651